**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Nationstar Mortgage, LLC, | Case No. 2:15-cv-01507-JAD-VCF |
| Plaintiff<br>v. | |
| Saticoy Bay LLC Series 5501 Wells Cathedral, a Nevada limited liability company, | **Order Granting Summary Judgment in Favor of Saticoy Bay and Closing Case**<br><br>[ECF Nos. 45, 46] |
| Defendant | |

This is an equitable quiet-title action to determine the effect of the 2013 non-judicial foreclosure sale of a home on which Nationstar Mortgage, LLC claims a deed of trust. Nationstar sues the foreclosure-sale purchaser Saticoy Bay LLC Series 5501 Wells Cathedral for unjust-enrichment damages and a declaration that its security interest was unaffected by the foreclosure. Saticoy counterclaims for the opposite declaration.

Nationstar's equitable quiet-title claim is founded on two theories: (1) the foreclosure sale is void because Nevada's statutory foreclosure scheme violated its due process rights; and (2) equity requires the court to set aside the sale due to the inadequate sale price and other irregularities in the foreclosure process. Nationstar and Saticoy now cross-move for summary judgment on their quiet-title claims.[1] Because Nationstar's theories fail as a matter of law or fact, I grant summary judgment in favor of Saticoy Bay, dismiss Nationstar's unjust-enrichment claim, and close this case.

---

[1] ECF Nos. 45, 46. I find these motions suitable for disposition without oral argument. L.R. 78-1.

**Statement of Facts**

Joshua Fain purchased the home located at 5501 Wells Cathedral Avenue in Las Vegas, Nevada in 2009 with a $148,117 loan from Bank of America, secured by a deed of trust.[2]  After one assignment, that deed of trust is in Nationstar's name.[3]  The home is located in the Eagle Creek planned unit development and subject to certain declarations, codes, and bylaws for its homeowners' association, which require the owners of such homes to pay certain assessments.[4]  The Nevada Legislature gave homeowners' associations (HOAs) a superpriorty lien against residential property for certain delinquent assessments, and it established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure for HOAs to enforce that lien.[5]  When the assessments on this home became delinquent, the HOA commenced non-judicial foreclosure proceedings.[6]

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*") in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[7]  In cases since *SFR I*, courts have recognized a handful of theories that operate to prevent such security interests from being wiped out in an HOA foreclosure.  For instance, if the deed of trust belonged to a government lender like Fannie Mae

---

[2] ECF No. 1-1 (deed of trust).  I take judicial notice of the recorded documents provided by the parties.

[3] ECF No. 1-2 (7/3/13 assignment of deed of trust).

[4] ECF Nos. 1-1 at 21 (planned-unit development rider to deed of trust); 45-8 (CC&Rs).

[5] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).

[6] ECF No. 1-3 (notice of lien for delinquent assessments).

[7] *SFR I*, 334 P.3d at 419.

or Freddie Mac at the time of the foreclosure, the Federal Foreclosure Bar in the Housing and Economic Recovery Act[8] saved it from extinguishment.[9]  Under another theory, if the lender tendered the full superpriority portion of the lien before the foreclosure sale but the HOA foreclosed anyway, the lender "maintain[s] its senior interest."[10]

This deed of trust did not belong to Fannie Mae or Freddie Mac, and Nationstar did not tender any payment in an effort to stop the sale.  Nationstar nevertheless seeks a declaration that the HOA's foreclosure did not extinguish its deed of trust on this property,[11] and Saticoy Bay counterclaims for its own declaration that Nationstar has no right or interest in it.[12]  Nationstar also pleads an unjust-enrichment claim, which is expressly contingent on "Nationstar's action be[ing] successful in quieting title and obtaining declaratory relief against Saticoy, and further setting aside the HOA sale."[13]  I construe the competing quiet-title claims as the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*:  an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[14]  The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[15]

---

[8] 12 U.S.C. § 4617(j)(3).

[9] *See, e.g.*, *Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017).

[10] *Bank of Amer., N. A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 120 (Nev. 2018).

[11] ECF No. 1 at 12.

[12] ECF No. 8 at 5.

[13] ECF o. 1 at 12, ¶ 95.

[14] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[15] *Id*. at 1112.

Discovery has closed, and Nationstar and Saticoy cross-move for summary judgment on their quiet-title claims. Nationstar argues that the HOA's foreclosure on this home failed to extinguish its first trust deed for three reasons: (1) Nevada's statutory foreclosure scheme violated its due-process rights as the Ninth Circuit recognized in *Bourne Valley Court Trust v. Wells Fargo Bank*;[16] (2) the notice was constitutionally inadequate under the circumstances; and (3) the grossly inadequate foreclosure-sale price, combined with other unfairness in the process, requires the court to set aside the sale.[17] Saticoy opposes Nationstar's summary-judgment motion and brings its own, arguing that Nationstar's claim fails under any theory.[18] I consider each argument in turn.

**Discussion**

**A.      Standards for competing motions for summary judgment**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[19] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[20] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[21] "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the

---

[16] *Bourne Valley Court Trust v. Wells Fargo Bank*, 832 F.3d 1154 (9th Cir. 2016).

[17] *See generally* ECF No. 45.

[18] ECF Nos. 46, 48.

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[20] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[21] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

1 appropriate evidentiary material identified and submitted in support of"—and against—"both

2 motions before ruling on each of them."[22]  I apply these principles in evaluating the parties'

3 competing motions.

4 **B.      Nationstar's facial due-process claim fails as a matter of law.**

5       Nationstar's lead theory for retaining its deed-of-trust interest is that the statutory scheme

6 in NRS Chapter 116 that authorized this sale violated lenders' due-process rights because it did

7 not require the HOA to send lenders notice of a foreclosure sale.[23]  Nationstar relies on the Ninth

8 Circuit's opinion in *Bourne Valley Court Trust v. Wells Fargo Bank* to support this theory.[24]

9 The *Bourne Valley* court found the notice requirements in Chapter 116 unconstitutional.  The

10 lynchpin of that *Bourne Valley* holding was the majority's interpretation of Chapter 116's notice

11 requirements: it found that the statute's (since-amended) scheme was an opt-in one that required

12 notice of the foreclosure "only if the lender had affirmatively requested notice."[25]  The panel

13 expressly rejected the notion that NRS Chapter 116 incorporated the additional notice rules from

14 NRS 107.090, so foreclosing HOAs "were required to provide notice to mortgage lenders even

15 absent a request."[26]

16       But in *SFR Investments Pool 1, LLC v. Bank of New York Mellon*, known in this

17 jurisprudence as the "Star Hill" case,[27] the Nevada Supreme Court held that the *Bourne Valley*

18

---

19 [22] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

20

[23] ECF No. 1 at 6–8.

21 [24] ECF No. 45 at 4–6.

[25] *Bourne Valley*, 832 F.2d at 1157.

22 [26] *Id*. at 1159.

23 [27] *SFR Investments Pool 1, LLC v. Bank of New York Mellon* ("*Star Hill*"), 422 P.3d 1248, 1253 (Nev. 2018).

majority incorrectly interpreted this state statutory scheme.[28]  And because federal district courts

must follow the holdings of the state's highest court when applying state law, *Bourne Valley* is

no longer controlling.[29]  Nationstar argues that *Star Hill* had no impact on the *Bourne Valley*

ruling, which remains binding on this district court.  But Ninth Circuit decisions since *Star Hill*

recognize that *Bourne Valley* is no longer good law and that the statutory notice scheme in place

at the time of this foreclosure sale was constitutionally adequate.[30]  So, Nationstar's facial due-

process theory fails as a matter of law.[31]

---

[28] *Id*. at 1253 ("[W]e decline to follow the majority holding in *Bourne Valley*, 832 F.3d at 1159. NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090 and, to the extent NRS Chapter 116 was ambiguous in this regard, legislative history and the principles of statutory construction support this conclusion.").

[29] *See Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 885 n.7 (9th Cir. 2000) (quoting *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) (noting that the circuit's interpretation of state law is binding only "in the absence of any subsequent indication from the [state] courts [that the circuit's] interpretation was incorrect"); *see also Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1146 (9th Cir. 2001) ("[I]t is solely within the province of the state courts to authoritatively construe state legislation.").

[30] *See Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 624 (9th Cir. 2019) ("In light of [*Star Hill*], *Bourne Valley* no longer controls the analysis, and we conclude that Nev. Rev. Stat. § 116.3116 *et seq*. is not facially unconstitutional on the basis of an impermissible opt-in notice scheme."); *Bank of Am., N.A. v. Soriano*, 2019 WL 4013350, at *1 (9th Cir. May 6, 2019) (order) ("This court recently held that the Nevada statutory scheme that grants a homeowners association a lien with super-priority status is no longer controlled by the analysis in *Bourne Valley* [ ], in light of the Nevada Supreme Court's decision in [*Star Hill*]").

[31] Nationstar's reply argument that *Star Hill* is of no consequence because the Nevada Supreme Court can't overrule a Ninth Circuit decision is simply wrong.  *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (holding that, "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of [an intervening decision on controlling state law by a state court of last resort], a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled.").

**C.      The foreclosure sale did not violate Nationstar's due-process rights as applied.**

Nationstar alternatively contends that the foreclosure sale violated its due-process rights as applied because the notices did not explain that the HOA had a superpriority lien or how much of its lien qualified as superpriority.[32]  Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[33]  Notice must (1) be provided through means that might reasonably be used by a person "desirous of actually informing" the recipient; (2) "afford a reasonable time for those interested to make their appearance;" and (3) be of "such nature as reasonably to convey the required information."[34]  "[I]f with due regard for the practicalities and peculiarities of the case these conditions are reasonably met[, then] the constitutional requirements are satisfied."[35]  "The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals."[36]

That statute required HOAs to provide a notice of sale with "[t]he amount necessary to satisfy the lien as of the date of the proposed sale," a warning that the property would be sold "UNLESS YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE SALE DATE," and contact information for calling "THE FORECLOSURE SECTION OF THE OMBUDSMAN'S OFFICE, NEVADA REAL ESTATE DIVISION" for assistance.[37]  This

---

[32] ECF No. 45 at 7–8.

[33] *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

[34] *Id*. at 314–15.

[35] *Id*.

[36] *Id*. at 315 (quotation omitted).

[37] Nev. Rev. Stat. § 116.311635(3)(b).

7

information, combined with the statutory scheme's priority provision, NRS 116.3116, results in notice reasonably calculated to provide lenders with notice of the pendency of nonjudicial foreclosure proceedings that may extinguish their security interests. As the Nevada Supreme Court explained when rejecting the same argument in *SFR I*:

> U.S. Bank . . . argues that due process requires specific notice indicating the amount of the superpriority piece of the lien and explaining how the beneficiary of the first deed of trust can prevent the superpriority foreclosure sale. But it appears from the record that specific lien amounts were stated in the notices, ranging from $1,149.24 when the notice of delinquency was recorded to $4,542.06 when the notice of sale was sent. The notices went to the homeowner and other junior lienholders, not just U.S. Bank, so it was appropriate to state the total amount of the lien. . . . And from what little the record contains, nothing appears to have stopped U.S. Bank from determining the precise superpriority amount in advance of the sale or paying the entire amount and requesting a refund of the balance. *Cf. In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995) ("[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right.").[38]

Just as in *SFR I*, the notices of this lien and sale, which Nationstar does not deny receiving, contained all of the information that the statute required.[39] Nationstar suggests that its deprivation was particularly bad because the lack of "notice of the existence of a superpriority lien, or the superpriority amount" was exacerbated by the fact that this HOA's agent, Nevada Association Services (NAS), had taken the position in other suits and arbitrations that "foreclosure could not impair the deed of trust."[40] But the Constitution does not require this level of detail. With the notices and the statutory language that expressly gave HOA's a

---

[38] *SFR I*, 334 P.3d at 418.

[39] *See* ECF No. 1-5 at 3.

[40] ECF No. 45 at 7.

1  superpriority lien, Nationstar had constitutionally required notice. Due process did not also

2  require the HOA to provide an accurate interpretation of the statute's application. As the Nevada

3  Supreme Court recognized in *K&P Homes v. Christiana Trust*, NRS 116.3116 has operated the

4  same way "since the statute's inception."[41] That Nationstar relied on someone else's erroneous

5  interpretation of that statute does not render the statute—or the notices complying with it—

6  inadequate. Nationstar thus has not shown that the sale was invalid as a result of a due-process

7  violation.

8

**D.    Lack of evidence that unfairness affected the sale precludes relief under a *Shadow***
9  ***Canyon* theory.**

10         Finally, Nationstar contends that the sale of the property for 15% of its value, plus other

11  unfairness in the sale, combine to compel this court to set aside the sale.[42] This price-plus-

12  irregularities theory is grounded in the Nevada Supreme Court's holding in *Nationstar Mortg.*

13  *LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon* that, although inadequacy in price alone

14  will not justify setting aside a foreclosure sale, "where the inadequacy of the price is great, a

15  court may grant relief based on slight evidence of fraud, unfairness, or oppression" that affected

16  the sale.[43] Saticoy argues that Nationstar has not shown that the sale was "tainted by any

17  evidence of fraud, oppression or unfairness."[44]

18         Nationstar has done no more than merely hint at potential unfairness in the sale process.

19  It offers evidence that the HOA's foreclosure-sale agent NAS was taking the position in 2010,

20

---

21  [41] *K&P Homes v. Christiana Tr.*, 398 P.3d 292, 295 (Nev. 2017).

22  [42] ECF No. 45 at 8–10.

23  [43] *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646–
    47 (Nev. 2017).

[44] ECF No. 48 at 9.

2011, and 2012 generally and in other cases that these HOA foreclosure sales did not impact first deeds of trust.[45] But this foreclosure sale didn't occur until May of 2014,[46] so this evidence is not proof of NAS's position during the period relevant to these notices.

Even if I could conclude that this two-years-earlier evidence of NAS's flawed legal interpretation qualifies as fraud, unfairness, or oppression,[47] Nationstar has offered nothing to show that it impacted the sale. As the *Shadow Canyon* court explained, "if the district court closely scrutinizes the circumstances of the sale and finds no evidence that the sale was affected by fraud, unfairness, or oppression, then the sale cannot be set aside, regardless of the inadequacy of price."[48] Nationstar points to nothing in the record that would suggest that it sat on its hands—or that anyone else connected to this sale acted or failed to act—in reliance on NAS's stale interpretation of NRS 116.3116. So, Nationstar has not shown that it is entitled to set aside the foreclosure sale based on a *Shadow Canyon* theory.

* * *

When the plaintiff moves for summary judgment, "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[49] The recognition by the Nevada Supreme Court and the Ninth Circuit that the statutory-notice scheme

---

[45] ECF No. 45 at 7; ECF Nos. 45-9, 45-10.

[46] ECF No. 1-6.

[47] To the extent that Nationstar argues that the "massive legal uncertainty" surrounding the application of NRS 116.3116 at the time made this foreclosure unfair, I reject this argument because it would mean that all HOA foreclosure sales before September 18, 2014, should be set aside under *Shadow Wood*. Plus, it ignores the Nevada Supreme Court's recognition that NRS 116.3116 has always operated this way. *K&P Homes*, 398 P.3d at 295.

[48] *Id*. at 648–49.

[49] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

for HOA foreclosures did not violate due process, coupled with Nationstar's failure to show that the statutory-notice requirements were inadequate as applied, doom Nationstar's due-process theories. The complete absence of proof that the sale was affected by unfairness prevents Nationstar from garnering summary judgment based on *Shadow Canyon*.[50] And because these due-process and *Shadow Canyon* theories also double as Nationstar's defenses to Saticoy's quiet-title claim, these legal and factual deficiencies also entitle Saticoy to summary judgment in its favor on the competing quiet-title claims under *SFR I*.

**E.     The failure of Nationstar's quiet-title claims also compels dismissal of its unjust-enrichment claim.**

The resolution of Nationstar's quiet-title claim in favor of Saticoy moots its unjust-enrichment claim. With express language, Nationstar made this claim contingent on its quiet-title success:

> 95.     Should Nationstar's action be successful in quieting title and obtaining declaratory relief against Saticoy, and further setting aside the HOA Sale, Saticoy will have been unjustly enriched by the HOA Sale, usage of the Property and advancements of taxes, insurance and/or other property care costs by Nationstar and/or its predecessors.[51]

Because Nationstar's action was not successful in its quiet-title pursuit, I dismiss this unjust-enrichment claim as moot.

---

[50] Because I reach these conclusions based on these legal and factual deficiencies, I need not and do not reach the parties' remaining arguments.

[51] ECF No. 1 at ¶ 95.

## Conclusion

IT IS THEREFORE ORDERED that Nationstar Mortgage, LLC's motion for summary judgment **[ECF No. 45] is DENIED** and Saticoy Bay LLC Series 5501 Wells Cathedral's motion for summary judgment **[ECF No. 46] is GRANTED**.  Saticoy Bay is entitled to summary judgment on the parties' competing quiet-title claims, and Nationstar's unjust-enrichment claim is dismissed as moot, leaving no claims or parties remaining.

With good cause appearing and no reason to delay, IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Clerk of Court is directed to ENTER FINAL JUDGMENT in favor of Saticoy Bay LLC Series 5501 Wells Cathedral and against Nationstar Mortgage, LLC, **DECLARING THAT**:

> The May 9, 2014, foreclosure sale of the property located at 5501 Wells Cathedral Avenue in Las Vegas, Nevada, extinguished the deed of trust dated September 23, 2009, which was recorded on September 29, 2009, as instrument number 200909290002647 in the records of the Clark County Recorder, so Saticoy Bay LLC Series 5501 Wells Cathedral purchased that property free and clear of the deed of trust,

and CLOSE THIS CASE.

Dated: September 29, 2019

_____
U.S. District Judge Jennifer A. Dorsey